Andrien, Appellant, *v.* Heffernan, Appellant.

Argued January 14, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

*Arthur L. Reeser,* of *Lutz, Ervin, Reeser & Fronefield,* with him *Howard M. Lutz,* for James J. Andrien.— From the testimony it is submitted there is no warrant for the court's finding the amount of $1,750 as the proper and just abatement from the purchase price under the agreement of the parties: White v. Lowry, 27 Pa. 254; Beaupland v. McKeen, 28 Pa. 124; Tyson v. Eyrick, 141 Pa. 296; Fuller v. Mulhollan, 40 Pa. Superior Ct. 257; Erwin v. Myers, 46 Pa. 96.

*John E. McDonough,* for Michael J. Heffernan.—We have been unable to find any Pennsylvania authority in which an abatement has been sustained where the only deficiency in title was an easement right-of-way.

It was held in McDermott v. Reiter, 279 Pa. 545, that such an easement was one which the vendor could not release and therefore compel the vendee to take, nor could the vendee in this case be compelled to take.

If the purchaser, as in this case, accepts the deed under the stipulation filed in the court and agrees to pay the purchase money, the case should be limited to the court below for appropriate action.

Of the same tenor is Hannan v. Carroll, 283 Pa. 61; Bailey v. Cooney, 284 Pa. 508. In Medoff v. Vandersaal, 271 Pa. 169, it was held that the vendee may waive full performance and take the title which the seller can give without abatement for the purchase money for the outstanding interest not covered by the agreement of sale.

An interesting case where an outstanding lease prevented the full compliance with an agreement of sale is that of Bricker v. Kline, 86 Pa. Superior Ct. 594. There it was held that the vendee having taken the title of the lease, was obliged to pay the consideration moneys.

OPINION BY MR. JUSTICE SADLER, February 5, 1930:

Andrien, the plaintiff, agreed, on March 2, 1928, to purchase, for $50,000, from defendant Heffernan, a tract of land containing between 14 and 15 acres. A part of the consideration was to be satisfied by the assumption of an outstanding mortgage on the land. Of the balance, due in cash, $1,000 was paid when the contract was signed, $4,000 the day after, and the balance at the time fixed for settlement. When the contract of sale was entered into, a pencil sketch of the property offered was exhibited to the vendee, upon which streets were marked, as the agent testified. Later, a draft was prepared which showed the possible subdivision of the tract into lots, which Andrien insisted was displayed to him before the purchase was made. The court, in its 13th finding, found the plot, last referred to, was submitted prior to the execution of the agreement, but, on exception, this conclusion was set aside. As we view the

case, this disputed question of fact is immaterial to a proper determination of the real controversy.

When the date for final settlement arrived it appeared, by the certificate of the company employed to make the necessary searches, that a private lane, passing through the southwesterly side of the property, had been reserved in a deed executed 125 or more years before by the vendor's predecessors in title. It was not marked on the ground, and its existence was unknown to either of the parties to this proceeding. One end was closed by a fence, which had been in place for at least 40 years, and the right-of-way, 25 feet in width, was covered with trees and shrubbery. Because of this unextinguished easement,—for nonuser would not destroy it (Hall v. McCaughey, 51 Pa. 43; Howell v. Northampton R. R. Co., 211 Pa. 284),—the title company refused to insure free and clear of all encumbrances. It contained in all fifty six-hundredths of an acre, and passed through 11 of the paper lots marked on the plan finally prepared, which had an area of forty five-hundredths of an acre, making a total of one and one-hundredth acres affected by the unused roadway.

Both parties were anxious that the sale be consummated, and the vendor offered to accept a reduction of $1,725 in the purchase price so that the transaction could be closed, but later withdrew the tender made. The abatement in the amount of the consideration was deemed by Andrien to be insufficient, and the parties agreed, on July 23, 1928, that $6,000 be deposited until the question of a proper allowance for damages sustained should be fixed by the court in a judicial proceeding; the amount found due, with interest thereon, to be turned back to the vendee, who paid the balance of the purchase money, and the remaining portion, if any, to the vendor.

A purchaser, who has contracted for a title free from encumbrances, may refuse to accept a deed tendered when one is discovered (McDermott v. Reiter, 279 Pa.

544; Howell v. Northampton R. R. Co., supra), though, ordinarily, if he accepts the conveyance with full knowledge of the existing defect, he cannot thereafter make claim for loss sustained: Hannan v. Carroll, 277 Pa. 32; Bricker v. Kline, 86 Pa. Superior Ct. 594. This is not so where the parties have expressly reserved their rights, as here, by agreement, or an express covenant to protect is inserted in the deed. The vendee may, however, insist that the vendor perform in so far as able where it is impossible for him to fully carry out his contract of sale, and, for this purpose, secure the aid of the equity court to force the delivery of a conveyance upon payment of the purchase price, less a just abatement from the consideration agreed on for the deficiency of title, quantity or quality of the estate: Burk's App., 75 Pa. 141; 25 R. C. L. 249.

An encumbrance has been defined "as a burden on land which depreciates its value, as a lien, easement or servitude, and includes any right or interest in the land which may subsist in third parties to the diminution of the value of the land, but consistent with the conveyance of title": Howell v. Northampton R. R. Co., supra; Batley v. Foerderer, 162 Pa. 460. If the property has been conveyed before discovery of the defect in title, he may maintain an action for damages, or defend to the obligation given for purchase money: Light v. Stoever, 12 S. & R. 431. A deduction from the purchase price is likewise properly allowed where specific performance is demanded, as already noted, or where the suit is to recover the sum remaining due. This rule has been applied where the defect was an outstanding leasehold (Cross v. Noble, 67 Pa. 74), or, as here, an easement or right-of-way: Stehley v. Irvin, 8 Pa. 500; Wilson v. Cochran, 46 Pa. 229; Eby v. Elder, 122 Pa. 342. The rule suggested is applicable, though the vendor was acting in good faith, and was himself innocent of the existence of a charge on the land: Tyson v. Eyrick, 141 Pa.

296; Latta v. Hax, 219 Pa. 483; Erwin v. Myers, 46 Pa. 96.

Ordinarily, the deduction is made pro tanto, and where a part of the acreage cannot be conveyed, and the remaining land is not injured by the failure to convey a portion, the corresponding part of the purchase money is withheld (Napier v. Darlington, 70 Pa. 64; White v. Lowry, 27 Pa. 254) without allowance for loss of the bargain: Dumars v. Miller, 34 Pa. 319; note, 48 A. L. R. 19. If no damage is shown, then the recovery is limited to a nominal amount: Hennershotz v. Gallagher, 124 Pa. 1. In the present case, the trial court first found that the land within the right-of-way, plus that contained in the 11 paper lots affected, amounted to one and one-hundredth acres of the entire 14 and a fraction, sold for $50,000, and allowed to the vendee a proportionate sum of this amount, with interest from the time the money was deposited with the trust company, as deductible compensation. On exceptions, the court in banc determined this sum did not fairly measure the loss. So that the proper amount could be arrived at, the decree first entered to No. 140, January Term, 1930, and now appealed from by Andrien, was set aside, and additional testimony taken to fix the damages.

The court took the view that the land embraced in the old right-of-way could not be considered as a fraction of that taken from the whole, nor could the area of the remaining portion of the 11 lots, laid out on the plan, and affected injuriously by the easement, be added thereto, using the total decrease in acreage as a basis for the deduction allowed, the rule first applied by the trial judge. As to the last item, it is clear that the land outside of the right-of-way, marked out on the unrecorded plan prepared, but not staked off on the ground, could not be treated as so many separate subdivisions affected by the encumbrance. The correctness of this conclusion, as finally reached by the court, is amply justified by the authorities, where a similar question has been

considered in the case of land appropriated under the power of eminent domain: Gorgas v. P., H. & P. R. R. Co., 215 Pa. 501; Penna. S. V. R. Co. v. Cleary, 125 Pa. 442; Hamory v. R. R., 222 Pa. 631; Kleppner v. R. R., 247 Pa. 605; Rothenberger v. Reading, 296 Pa. 423. Nor could the acreage within the right-of-way be regarded in assessing the damages as so many square feet of land taken, but the effect thereof on the property which it covered, as well as the disadvantages to all of that remaining, furnished the proper test. A part of the tract might have been more valuable than the remaining, and the damages are to be fixed by the worth of the property agreed to be conveyed on the basis of the price to be paid, and with the easement imposed thereon, having in mind all the disadvantages flowing from the existing, though unused, right-of-way: Tyson v. Eyrick, supra; Ellet v. Paxson, 2 W. & S. 418; Latta v. Hax, supra; Stehley v. Irvin, supra; Beaupland v. McKeen, 28 Pa. 124. The true rule is expressed in Eby v. Elder, supra, where a right-of-way was involved. The court below was affirmed in that case when it advised the jury to assess the damages as follows (page 347): "What was the value of the property without the road, and what was the value of the property with the road on it; and the difference between these two sums would represent the injury." The testimony presented on behalf of plaintiff to show the loss, so measured, varied from $8,000 to $11,000, while the estimates of witnesses for defendant were from $500 to $800. After considering all the evidence, the court, as finder of the facts, and having before it sufficient proof to justify its conclusion, which makes interference with the determination impossible here, fixed $1,750 as the proper sum to be allowed, and directed, in its final decree, that this amount, with interest from July 23, 1928, the time of the deposit of the retained purchase money, be paid to the vendee, and the balance to the vendor.

Both sides have appealed; the plaintiff complaining that the award is insufficient in amount, and the defendant of the allowance of any sum whatsoever, insisting that no abatement was legally allowable in a proceeding where the purchaser was asking specific performance. The conclusion reached by the court below in each case was proper and should be approved. As a joint record was prepared and used in both appeals, the cost of printing the same should be divided, and the respective parties pay for their own briefs.

The decrees in both cases are affirmed, each party to pay the costs of his own appeal, and one-half of the cost of printing the record.